**Dated: October 13, 2006**
**The following is ORDERED:**



                                           Tom R. Cornish
                              UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**ROBERT LEWIS HARRIS** and         Case No. 05-87033
**JOANNA RAY HARRIS**               Chapter 7

                    Debtors.

## O R D E R

On this day the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. 707(b)(2) with Authority in Support, and Objection to Motion to Dismiss and Brief, filed by the Debtors, came before this Court for consideration. The Parties submitted a Stipulation in Lieu of Evidentiary Hearing and filed additional supporting briefs. After review, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Debtors filed for relief under Chapter 7 of the Bankruptcy Code on December 9, 2005. Debtors listed no priority debt in their schedules and nonpriority unsecured debt totaling $26,286.30. As provided in the Stipulation, Debtors are individuals whose debts are primarily consumer debts,

therefore they are subject to the requirements of 11 U.S.C. § 707(b). The Debtors indicated on their Amended Statement of Current Monthly Income and Means Test Calculation form ("Form B22A") that the presumption of abuse does not arise. A Statement of Presumed Abuse was filed by the United States Trustee (the "UST") on March 31, 2006. The UST filed its Motion to Dismiss on April 28, 2006.

Line 13 on Debtors' Form B22A shows an annualized current monthly income for purposes of 11 U.S.C. § 707(b)(7) of $64,804.92. The applicable median family income for a family of four in Oklahoma is $49,881.00.

A homestead subject to first and second mortgages is listed in Debtors' Schedule A, and Schedule B lists a 2002 Chevrolet Blazer. Debtors' Statement of Intent indicates their intent to surrender the homestead and Blazer. Following the filing of their bankruptcy, Debtors surrendered the house and Blazer and no longer make payments on these loans. Debtors are also in possession of a 1990 Chevrolet Pickup and are not making payments on this vehicle.

The UST contends that Debtors cannot include monthly payments for secured debt in their means test calculation when the Debtors' intent is to surrender the corresponding collateral. The UST also argues that Debtors cannot include ownership/lease expenses for the 1990 Chevrolet Pickup since they do not make payments on the vehicle.

This Court must therefore determine whether the Debtors can deduct secured debt payments when they intend to surrender the collateral, and whether the Debtors can deduct the ownership expense for vehicles on which they do not make periodic payments.

Section 707(b)(1) provides that, after notice and a hearing, the Court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be

2

an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1). Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the means test determines whether a presumption of abuse arises in a debtor's bankruptcy case using debtor's current monthly income and certain allowed deductions. Section 707(b)(2)(A)(i) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of -
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(i). This presumption may be rebutted by the Debtors by presenting evidence of special circumstances. 11 U.S.C. § 707(b)(2)(B).

> Section 707(b)(2)(A)(ii)(I) provides, in part:
>
> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii).

Debtors are allowed to deduct average monthly payments for secured debts. 11 U.S.C. § 707(b)(2)(A)(i) & (iii). Section 707(b)(2)(A)(iii) provides that:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of -
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the

3

> petition; and
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

Thus, for above-median debtors, the five general categories of allowable expenses under the statute are as follows: (1) expenses under the IRS' National Standards, e.g. food, clothing, household supplies, personal care, and miscellaneous expenses; (2) expenses under the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items the IRS categorizes as "Other Necessary Expenses," including such items as taxes, mandatory payroll deductions, health care, and telecommunication services; (4) actual expenses, with limitations, for certain other expenses specified by the Bankruptcy Code; and (5) payments on secured and priority debts. *In re Oliver,* ___ B.R. ___, 2006 WL 2468297, at *4 (Bankr. W.D. Tex. Aug. 8, 2006).

In interpreting a statute, "the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *United States v. Quarrell,* 310 F.3d 664, 669 (10th Cir. 2002) (quotation omitted). A court should "give[] effect to every clause and word of [the] statute." *Negonsott v. Samuels,* 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed 457 (1993).

This Court will first address whether Debtors may include ownership expenses for vehicles on which they do not make payments. The UST argues that allowing the ownership expense deductions would be contrary to the purpose of § 707(b)(2). Debtors argue that the plain meaning

4

of the statute allows Debtors to deduct the ownership expenses on both vehicles. Debtors also argue that allowing the ownership expense only to debtors who make car payments would have a disparate impact on the debtors in the greatest need of repairing or replacing their vehicles.

The IRS Local Standards apply to transportation costs, which are divided into two parts: ownership expenses and operating expenses. In examining whether ownership expenses can be deducted for a vehicle owned free and clear, courts have found guidance from the IRS publications regarding the application of its standards. *Oliver,* 2006 WL 2468297 (holding that a debtor who owned his vehicle free and clear could not claim ownership expense); *In re Barraza,* 346 B.R.724 (Bankr. N.D. Tex. 2006) (holding that a debtor cannot take ownership deduction for a vehicle that is neither financed nor leased); *In re Hardacre,* 338 B.R. 718 (Bankr. N.D. Tex. 2006) (holding in a Chapter 13 that debtor cannot deduct ownership expense for vehicle owned free and clear); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006) (holding that, in the context of a Chapter 13 bankruptcy, a debtor cannot deduct ownership expense when debtor is not incurring expenses for the purchase or lease of a vehicle); *In re Carlin*, __ B.R. __, 2006 WL 2398750 (Bankr. D. Or. Aug. 18, 2006) (agreeing with *Hardacre* and *McGuire* in concluding that the statute does not allow the ownership expense deduction to free and clear owners). According to the guidelines, a taxpayer cannot claim an IRS ownership expense for a vehicle the taxpayer owns free and clear. *McGuire*, 342 B.R. at 612-13.

The statute itself provides that a "debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts" under the Standards. In examining the language of the statute, the *McGuire* court noted that if a debtor is not incurring ownership expenses for a vehicle, then the ownership expense is not "applicable" to that debtor. *Id.* at 613.

5

The disparate impact argument urged by the Debtors was rejected by the court in *Barraza*, which noted Congress' apparent conclusion that "debtors who own vehicles outright have a greater ability to commit funds to repay unsecured creditors than debtors who have financed or leased vehicles." *Barraza,* 346 B.R. at 729. Further, Debtors do not have a constitutional right to a bankruptcy discharge, nor do they have a constitutional right to file under Chapter 7 rather than Chapter 13. *Id.* at 728.

The Bankruptcy Court for the District of Delaware held in a recent opinion that a debtor may take the ownership deduction for a car on which the debtor is not making payments. *In re Fowler*, __B.R.__, 2006 WL 2613372 (Bankr. D. Del. September 11, 2006). The court examined 11 U.S.C. § 707(b)(2) and the IRS Standards, and reasoned that Congress did not intend the Standards to apply as a cap. *Id.* at *3. The court also noted that allowing only debtors with a car payment to take the deduction would create unfair results, in that a debtor with a very low car payment (e.g. $1) could use the deduction but a debtor with no car payment cannot take the deduction. *Id.* at *4.

The *Fowler* court cited to *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006) in support of its holding. *Fowler,* 2006 WL 2613372, at *3-6. In *Demonica*, the debtor did not own or lease the vehicle at issue, but was the primary user of the vehicle and did make the monthly payments. *Demonica,* 345 B.R. at 904. The *Demonica* court actually found the reasoning in *McGuire* persuasive, but because the debtor actually incurred a monthly ownership expense in *Demonica*, the court allowed the debtor to claim the ownership deduction.

This Court finds the reasoning in *McGuire*, *Barraza* and other cases with similar holdings persuasive. The majority of case law on this point supports the holding in those cases. Further, the *Demonica* case can be distinguished in that the debtor in that case was actually making ownership

6

payments, whereas the Debtors in this case are not making ownership payments on their vehicles. Therefore, this Court holds that the ownership expense only applies to debtors who are actually obligated to pay a monthly loan or lease payment associated with a vehicle. As a result, Debtors may not claim ownership expenses for the Blazer or the 1990 Chevrolet Pickup.

Next this Court will examine the issue of whether the Debtors can deduct secured debt payments when they intend to surrender the collateral. The UST argues that the plain language of section 707(b)(2) and the policies underlying BAPCPA preclude the Debtors from deducting monthly payments for the surrendered homestead and Blazer. Debtors argue that they are entitled to the secured debt deduction despite their intent to surrender, and cite to *In re Walker,* 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006) in support of their argument. *See also, In re Oliver*, 2006 WL 2086691 (Bankr. D. Or. Aug. 30, 2006).

The *Walker* court addressed the issue of whether debtors may include in their means test calculation installment payments on secured debts if the debtors intend to surrender the collateral after the bankruptcy filing. In examining 11 U.S.C. § 707(b)(2)(A)(iii), the bankruptcy court ruled that the plain meaning of the phrase "scheduled as contractually due" allowed the debtors to deduct secured debt payments regardless of whether the debtor had intended to surrender the property. *Walker,* 2006 WL 1314125, at *3-4.

A different interpretation was made, however, in *In re Skaggs*, __B.R.__, 2006 WL 2529510, at *4 (Bankr. E.D. Mo. Aug. 16, 2006), wherein the court stated that *Walker* applied a dictionary definition of the word "scheduled" in concluding that payments scheduled as contractually due are those payments the debtor will be required to make on certain dates in the future. "Congress used the phrase 'scheduled as' several times in the Bankruptcy Code to refer not to the common

7

dictionary meaning for the word schedule (i.e., 'to plan for a certain date'), but to whether a debt is identified on a debtor's bankruptcy schedules." *Id.* Therefore, a debtor's "schedules and statements form the basis from which the Court should determine whether a debt is 'scheduled as contractually due.'" *Id.*

As the bankruptcy court in *Skaggs* further pointed out, focusing "on the single term 'contractually due' without due consideration of the import of the term 'scheduled' and the phrase 'in each of the 60 months following the date of the petition' will miss the actual meaning and intent of § 707(b)(2)." *Id.*

The court in *Walker* reasoned:

> The surrender of the collateral does not change the fact that the payments are "contractually due." When a debtor files the bankruptcy petition, the debtor is contractually due for payments on the outstanding secured debts for the length of the contract. The debtor's contractual liability for the debt is not eliminated upon the surrender of the collateral.

*Walker,* 2006 WL 1314125, at *4. When a debtor surrenders collateral, the debtor is no longer required to make the scheduled installment payments. If there is a deficiency after application of the collateral proceeds to the indebtedness, an unsecured claim remains, but a secured debt no longer exists and no payment is due except for an unsecured deficiency balance. "Indeed, debtors return collateral to secured parties for the express purpose of lowering their monthly living expenses." *In re Love*, __B.R.__, 2006 WL 2536447, at *4 (Bankr. M.D. Ala. Aug. 30, 2006).

The court in *Walker* recognized that it is a "sensible" argument that "because the purpose of the statute is to determine whether the debtor could afford to repay creditors through a Chapter 13 plan, the debtor should not be permitted to deduct from [current monthly income] amounts that will not be expended during the post-petition period in a Chapter 7 case." *Walker,* 2006 WL

8

1314125, at *6. However, the court found that "[t]he fact that the debtor's deduction of secured debt payments for debts that will not be reaffirmed does not produce an accurate picture of the debtor's post-petition financial condition is not a sufficient basis upon which to conclude that the plain language of the statute produces an absurd result."

This Court does not find the reasoning in *Walker* persuasive, and respectfully disagrees. "The means test was intended to 'ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so.'" *Hardacre,* 338 B.R. at 725 (quoting 151 CONG. REC. S2470 (March 10, 2005)). Following the reasoning in *Skaggs*, this Court finds that monthly payments for secured debt cannot be included in the means test calculation when a debtor or debtors intend to surrender the corresponding collateral. As a result, the presumption of abuse arises in the Debtors' bankruptcy case under 11 U.S.C. § 707(b)(2).

IT IS THEREFORE ORDERED that the Debtors shall have **fifteen (15) days within which to convert their case to one under Chapter 13** of the Bankruptcy Code **or to file the appropriate pleading(s) that demonstrate special circumstances under 11 U.S.C. § 707(b)(2)(B)**. In the event the Debtors intend to avail themselves of an opportunity to rebut the presumption of abuse, proper notice of a response period and hearing date shall be filed by the Debtors.

IT IS FURTHER ORDERED that if the Debtors fail to timely convert their case or file the appropriate pleading(s) demonstrating special circumstances, an Order granting the UST's Motion to Dismiss will be entered based on the above findings, without further notice or hearing.

###